UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LANCE HOWARD,                      )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   No. 1:17-cv-03373-WTL-DLP
                                   )
KATHERINE JAMES,                   )
LORETTA L-P-N,                     )
                                   )
            Defendants.            )

**Entry Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Lance Howard, an Indiana State prisoner, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Defendants Katherine James ("RN James") and Loretta White ("NP White") were deliberately indifferent to an injury he sustained to his right index finger in violation of his rights under the Eighth Amendment to the U.S. Constitution. The amended complaint alleges:

> [O]n June 12, 2017, Nurse Katherine James, RN, and Nurse Loretta, LPN, were allegedly deliberately indifferent to his serious medical needs when they failed to send him to an outside emergency room for treatment of his hand injuries and associated pain. In addition, Nurse James wrapped up Mr. Howard's finger before custody staff could take pictures and falsified Mr. Howard's medical records to reflect that he was ordered a higher dose of medication.

Dkt. 10 at p. 2 (screening order) and dkt. 7 (amended complaint).

Defendants seek resolution of this action through summary judgment. For the reasons explained below, RN James and NP White are entitled to summary judgment as a matter of law on the claims alleged in the amended complaint. The motion for summary judgment, dkt. 79, is **granted.**

## I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

## II. Undisputed Facts

At all times relevant to this lawsuit, Mr. Howard was incarcerated in the Indiana Department of Correction ("IDOC") and housed at the Reception Diagnostic Center ("RDC"). On June 12, 2017, Mr. Howard sustained an injury to his right index finger when his hand was caught in his cell door upon opening.

Defendant NP White is an advanced practice nurse ("APN") licensed in the state of Indiana. An APN is also referred to as a nurse practitioner ("NP"). A nurse practitioner is considered a provider and can diagnose patients, prescribe medications, and make treatment plans for patients just like a physician. At all times relevant to Mr. Howard's amended complaint, NP White was employed at the RDC as a nurse practitioner by Wexford of Indiana, LLC, a private company that contracts with IDOC to provide medical services to Indiana prisoners.

RN James is a registered nurse ("RN") licensed in the state of Indiana. At all times relevant to Mr. Howard's amended complaint, RN James was employed at the RDC as a registered nurse

by Wexford of Indiana, LLC. As a registered nurse, RN James provides patient care, which includes, but is not limited to, assessing patients, obtaining vital signs, and following provider (i.e., physician, physician's assistant, or nurse practitioner) orders, such as administering and dispensing medications. RN James is able to enter a provider's orders into a patient's Electronic Medical Record ("EMR"). As a registered nurse, RN James does not prescribe medications, diagnose patients, develop a treatment plan for patients, or dictate a patients' medical care—only a provider can do that.

On June 12, 2017, NP White and RN James were working at the RDC when Mr. Howard came to the medical unit complaining of pain to his right index finger due to an injury. Upon visual inspection, the finger nail of the right index finger was pulled out and there was active bleeding.

RN James cleaned the wound and applied pressure to control the bleeding.

NP White performed a physical examination of Mr. Howard's right index finger and determined that stitches were not required and there was no apparent threat of loss of life or limb. Based on her professional training and experience as a nurse practitioner, NP White determined that the injury did not require consultation with a physician or transfer to a hospital emergency department. The wound was simple and could be cleaned and monitored for an infection on-site by NP White and the rest of the medical staff. This examination lasted only seconds.

After NP White finished her examination, RN James applied triple antibiotic ointment and xeroform to the affected area and covered it with a dry bandage. Xeroform is a type of gauze that is coated with petroleum jelly to create a barrier between the wound and the dry bandage. A dry bandage by itself can stick to the wound and cause additional trauma and pain to the patient when

the dressings are changed. Mr. Howard was in pain when RN James applied pressure to his wound and wrapped the bandage.

NP White ordered Tylenol, 650 mg twice a day for seven days as needed, for Mr. Howard's complaints of pain. NP White also ordered daily wound care for seven days. RN James correctly entered NP White's orders for pain medication and wound care into Mr. Howard's EMR. NP White's order for Tylenol was "650 mg BID PRN x7 days," which is what RN James documented in her narrative. BID means two times per day. PRN means as needed. The Tylenol tablets at RDC are 325 mg each; so, when RN James entered the order for Tylenol, she selected the 325 mg tablet option in the computer (because that is the only option she had) and she added instructions that Mr. Howard should take two tablets (which is two 325 mg tablets for a total of 650 mg) by mouth twice a day, as needed. Mr. Howard was not provided any pain medication at the time of the exam or before he was sent back to his cell. Mr. Howard first received this medication 12 hours after his injury.

RN James educated Mr. Howard on the signs of infection, such as redness, warmth, pus, and foul odor. Mr. Howard returned to his housing unit.

Pictures of Mr. Howard's injury were not taken on June 12, 2017, because his finger was wrapped up too quickly. Custody staff are able to take photographs of patient injuries at any time, if they wish. RN James had no authority to demand or order custody staff to take pictures. If custody staff required photographs of Mr. Howard's injury, they could have taken him to the medical unit and medical staff would have removed the bandages to allow for photographs. During his deposition, Mr. Howard stated, "[w]e're not here really about the pictures. We are here really about why was my – I'm not sent to the hospital." Dkt. 81-1, at 39:6-8.

On the morning of June 13, 2017, NP White evaluated Mr. Howard for his routine intake physical exam and follow-up on his finger injury. On exam, the wound to Mr. Howard's nailbed was still open and bleeding, which is normal for the type of injury, and there were no signs of infection. NP White instructed nursing staff to clean the wound and dress it with triple antibiotic ointment and a dry bandage. Custody staff came over to the medical unit and took pictures of Mr. Howard's injured finger before nursing staff covered the wound. NP White also ordered Bactrim, an oral antibiotic, prophylactically to ward off infection in the wound. NP White released Mr. Howard back to his cellhouse without incident.

Mr. Howard received 650 mg of Tylenol on June 13 and 14, 2017. After that, he received a pack of Tylenol for his use.

On June 14, 2017, NP White ordered an x-ray of Mr. Howard's hand and RN James entered the order into the computer system. The x-ray was read and interpreted by an outside radiologist, who determined that there was no fracture or dislocation to the right index finger.

On June 19, 2017, NP White met with Mr. Howard to go over his x-ray report. She explained that the x-ray was normal and the impression from the radiologist was that there was "no acute bony abnormality to the right hand."

On June 29, 2017, Mr. Howard transferred to another IDOC facility. NP White and RN James have had no further involvement in his medical care and treatment related to his finger injury. NP White has reviewed Mr. Howard's medical records and it appears that the injury to his right index finger healed appropriately and there is no indication of any ongoing pain, deformity, or abnormality of the right index finger. During his deposition, Mr. Howard confirmed that he has

no scar and he has a fingernail on the affected finger. Mr. Howard admitted that no one has told him that his finger is crooked or that he has nerve damages.

## III. Discussion

Defendants seek summary judgment on the claims alleged against them. The amended complaint alleges that RN James and NP White were deliberately indifferent to Mr. Howard's serious medical needs when they failed to send him to an outside emergency room for treatment of his hand injuries and associated pain. In addition, Nurse James is allegedly liable because she wrapped up Mr. Howard's finger before custody staff could take pictures and falsified Mr. Howard's medical records to reflect that he was ordered a higher dose of medication. *See* dkt. 10 at p. 2 (screening order) and dkt. 7 (amended complaint). Mr. Howard argues that summary judgment is not appropriate because pictures of his injury were not taken, and outside medical treatment was denied.

In response to the motion for summary judgment, Mr. Howard also seeks to add a claim based on the theory the RN James delayed his access to prescribed pain medication. Specifically, he argues that he did not receive any pain medication on June 12, 2017 (medication was provided 12 hours later). He further argues that RN James covered up his blood pressure result and forged an IDOC incident report. These claims were not alleged in the amended complaint. Mr. Howard "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). A plaintiff opposing summary judgment may not inject "new and drastic factual allegations," but instead must adhere to the complaint's "fundamental factual allegation[s]." *Whitaker v. Milwaukee Cnty.*, 772

6

F.3d 802, 808 (7th Cir. 2014). It is for this reason that Mr. Howard shall not be permitted to raise these new factual theories of liability at this time.

The claims based on the allegations that Mr. Howard was denied emergency medical services at an outside facility and that RN James wrapped Mr. Howard's finger before pictures could be taken by custody staff and falsified Mr. Howard's medical records to reflect that a higher dose of medication had been ordered are each discussed below.

### A. Eighth Amendment Standard

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661–62 (7th Cir. 2016) (alteration in original) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a claim that defendants were deliberately indifferent, Mr. Howard must establish that he suffered from "an objectively serious medical condition" and that the "defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Defendants do not dispute that Mr. Howard's right index finger injury was an objectively serious medical condition on June 12, 2017. The dispute, as in most claims of deliberate indifference, lies in whether the prison official knew of and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind." *Petties*, 836 F.3d at 728; *see Farmer*, 511 U.S. at 834. "An official is deliberately indifferent when he disregards a known condition that poses 'an excessive risk to inmate health or safety.'" *Wilson v.*

*Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Dunigan v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999)). Mere negligence or malpractice is insufficient. *Id.*

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

### B. RN Katherine James

On June 12, 2017, RN James' involvement in Mr. Howard's medical care related to his right index finger was limited to basic first aid and wound care. Mr. Howard's amended complaint alleges that RN James is liable to him for three reasons: (1) she refused to allow custody staff to take photographs of his injured finger; (2) she falsified his medical records to look like he was ordered 650 mg of pain medication when he was really only ordered 325 mg; and (3) she refused to send him to the emergency department.

Mr. Howard has not presented any evidence upon which a reasonable trier of fact could conclude that RN James was deliberately indifferent to Mr. Howard's injured finger. First, there is no evidence that she refused to allow custody staff to take photographs of Mr. Howard's injured finger. In addition, a photograph was taken the very next day. There is no plausible basis to conclude that the medical care Mr. Howard received was deficient because of the one-day delay in photographing the injury. RN James is entitled to summary judgment on this claim.

Second, there is no evidence that RN James falsified Mr. Howard's medical records to reflect that he was ordered 650 mg of pain medication when he was really only ordered 325 mg. NP White has confirmed that RN James correctly entered the Tylenol order into the EMR, which contradicts Mr. Howard's allegation that RN James falsified his medical records to reflect that he had been ordered a higher dose of Tylenol. Since NP White was the ordering provider, Mr. Howard cannot present evidence to the contrary. Under these circumstance, RN James is entitled to summary judgment on these claims.

Finally, there no evidence to suggest that RN James and not the nurse practitioner was responsible for determining whether outside emergency medical treatment was necessary. Here, NP White was the provider responsible for treating Mr. Howard by prescribing medications and determining a plan of care, including the decision to not send Mr. Howard to the hospital. It was reasonable for RN James to defer to the nurse practitioner's treatment decision under these circumstances. *See Pyles*, 771 F.3d at 409 (7th Cir. 2014) ("A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances.").

### C. NP Loretta White

Mr. Howard's claim of deliberate indifference against NP Loretta White is predicated on her decision to not send Mr. Howard to the hospital Emergency Department or consult with a physician on June 12, 2017, regarding Mr. Howard's finger injury. There is no evidence upon which to conclude that this decision was based on anything other than her professional judgment as an advanced nurse practitioner. Even accepting that NP White only looked at Mr. Howard's hand for a few seconds, this does not mean that her evaluation of Mr. Howard's injury was

improper. NP White took into consideration the type of wound to Mr. Howard's finger (avulsion of fingernail from the nailbed), his clinical presentation, and the ability to treat the wound on-site. There is no evidence that NP White's decision to treat Mr. Howard's finger injury on-site caused any damage. The wound did not develop an infection and an x-ray confirmed that there was no fracture or dislocation to the finger.

Based on Mr. Howard's own testimony, he has no scar and his fingernail is present on his right index finger. Further, Mr. Howard has not presented an expert witness who has determined that NP White's decision to treat his condition on-site was a substantial departure from accepted professional judgment, practice, or standards. Under these circumstances, NP White is entitled to judgment as a matter of law.

### IV. Conclusion

For the reasons explained above, defendants' motion for summary judgment, dkt. 79, is **granted.** Judgement consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 2/25/2019

*William T. Lawrence*

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

LANCE HOWARD
250494
PENDLETON - CIF
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Britney Jade McMahan
KATZ  KORIN CUNNINGHAM, P.C.
bmcmahan@kkclegal.com